UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on January 28, 2021

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. _____ |
| v. | GRAND JURY ORIGINAL |
| MICHAEL A. DRUMMOND | VIOLATIONS: |
| Defendant. | 18 U.S.C. § 371 (Conspiracy);<br>18 U.S.C. § 1344(2) (Bank Fraud);<br>18 U.S.C. § 1028A (Aggravated Identity Theft);<br>18 U.S.C. § 2 (Aiding and Abetting, and Causing an Act to be Done) |
| | Criminal Forfeiture:<br>18 U.S.C. § 981(a)(1) and (a)(2)(A),<br>28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p) |

## INDICTMENT

The Grand Jury for the District of Columbia charges:

## COUNT ONE
### (Conspiracy)

### Background

At all times material herein:

1.      Wells Fargo Bank, N.A., ("Wells Fargo") was a financial institution as defined by 18 U.S.C. § 20, with deposits insured by the Federal Deposit Insurance Corporation.  Wells Fargo maintained a financial center at 4302 Connecticut Avenue, NW, Washington, D.C. (the "Van Ness Wells Fargo").

2.      Funds deposited into Wells Fargo customers' bank accounts were owned by the customers, but in the custody and control of Wells Fargo.

3.      C.B. was a Wells Fargo customer with signatory authority over accounts x-0292, x-4878, and x-0834. C.B. resided in California.

4.      D.H. was a Wells Fargo customer with signatory authority over accounts x-9649, x-9055, x-7429, and x-0909. D.H. resided in California.

5.      When conducting banking transactions for on-site customers, Wells Fargo branch tellers were required to verify customer identities, including reviewing two forms of identification with one being a photo identification. Wells Fargo tellers also were to compare the signatures of the customers with the signature on the opening signature card on file with the bank.

6.      When conducting account withdrawals, branch tellers were to review account history to determine whether there were sufficient funds available for withdrawal. It was Wells Fargo's policy, however, that tellers and service managers were not to access customer account balances absent such withdrawal requests or permission from the customer.

7.      Conspirator A was a branch teller at the Van Ness Wells Fargo.

8.      Conspirator B was a service manager at the Van Ness Wells Fargo. Conspirator B's duties included coaching branch tellers, ordering cash, opening accounts, overseeing branch operations, and ensuring compliance with Wells Fargo policies. When the manager for the branch was absent, Conspirator B managed the entire Van Ness Wells Fargo.

9.      Conspirator B had authority to approve transactions over the branch tellers' limit. When doing so, Conspirator B was to verify the date of birth on the customer's proffered

identification to determine if the year of birth was logical with the customer's apparent age. If there were a discrepancy, Conspirator B was not to approve the transaction.

10.     Conspirator B had the responsibility for ordering cash (currency) for the Van Ness Wells Fargo. The amount of cash ordered typically depended upon recent customer traffic, anticipated paydays, Social Security Administration pay dates, and other expected transactions.

11.     Conspirator C was a resident of the State of Maryland.

12.     Defendant MICHAEL A. DRUMMOND was a resident of the State of Maryland.

## The Conspiracy

13.     From in or about April 2017 and continuing thereafter through at least in or about May 2017, in the District of Columbia and elsewhere, defendant DRUMMOND did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree with Conspirators A, B, and C, and others to commit offenses against the United States, that is: Bank Fraud, by engaging in a scheme to obtain money, funds, and assets under the custody and control of Wells Fargo by means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1344(2).

## Purpose of the Conspiracy

14.     The purpose of the conspiracy was for DRUMMOND and other conspirators to enrich themselves by withdrawing money from the accounts of Wells Fargo customers without the customers' permission.

## Manner and Means

15.     Among the manner and means by which DRUMMOND and other conspirators would and did carry out the objectives of the conspiracy were the following:

3

a.      Conspirator A and Conspirator B viewed balances in the bank accounts belonging to C.B. and D.H. without the permission and knowledge of C.B. and D.H. and shared that information with other members of the conspiracy.

b.      The conspirators transferred money from D.H.'s accounts x-9055, x-7429, and x-0909 to account x-9649 without the permission and knowledge of D.H.

c.      The conspirators assisted in withdrawals of $124,000 in cash and an $80,000 cashier's check from bank accounts from the Van Ness Wells Fargo without the permission and knowledge of C.B. and D.H., for a total theft amount of $204,000.

d.      A member of the conspiracy ordered more than the typical amounts of cash to be on hand at the Van Ness Wells Fargo to cover the unauthorized withdrawals from C.B. and D.H.'s accounts.

e.      DRUMMOND carried a firearm on or about his person when he was with Conspirator C to collect the proceeds of the crime.

**Overt Acts**

16.     In furtherance of the conspiracy and to effect the object thereof, DRUMMOND and other members of the conspiracy committed the following overt acts, among others, in the District of Columbia and elsewhere:

(1)     At a time uncertain but prior to April 28, 2017, DRUMMOND met with other members of the conspiracy to discuss making unauthorized withdrawals from customer accounts at the Van Ness Wells Fargo.

(2)     On or about April 28, 2017, in the District of Columbia, Conspirator B ordered $65,950 in cash, more than twice the typical amount, to be delivered on May 3, 2017, to the Van Ness Wells Fargo.

4

(3)     On or about May 4, 2017, in the District of Columbia, Conspirator B viewed the account balances of x-0292 and x-4878, without the permission and knowledge of C.B.

(4)     On or about May 5, 2017, in the District of Columbia, Conspirator A viewed the account balance of x-0292 at approximately 11:44 a.m. and again at 12:49 p.m. without the permission and knowledge of C.B.

(5)     On or about May 5, 2017, a few minutes after the 12:49 p.m. viewing, Conspirator C came to the teller line staffed by Conspirator A who then assisted Conspirator C in withdrawing $50,000 from x-0292 in cash without the permission and knowledge of C.B. and using a forged signature of C.B.

(6)     On or about May 5, 2017, shortly after 1:00 p.m., Conspirator C gave the cash that had been withdrawn from C.B.'s account without permission to DRUMMOND, who in turn gave Conspirator C a portion of the proceeds.

(7)     On or about May 5, 2017, Conspirator B ordered $55,375 in cash, or approximately twice the typical amount ordered, to be delivered on May 10, 2017, to the Van Ness Wells Fargo.

(8)     On or about May 6, 2017, at approximately 11:32 a.m., DRUMMOND placed a phone call to Conspirator A.

(9)     On or about May 8, 2017, at 9:10 a.m., DRUMMOND placed a phone call to Conspirator A.

(10)     On or about May 9, 2017, at approximately 10:34 a.m., DRUMMOND placed a phone call to Conspirator A.

(11)     On or about May 9, 2017, at approximately 10:35 a.m., DRUMMOND placed a phone call to Conspirator A.

(12)     On or about May 9, 2017, at approximately 12:12 p.m., while working as a teller at the Van Ness Wells Fargo, Conspirator A viewed the account balance of x-0292 and x-4878 without the permission and knowledge of C.B.

(13)     On or about May 9, 2017, at approximately 12:13 p.m., Conspirator C came to the teller line staffed by Conspirator A who then assisted Conspirator C in withdrawing $50,000 from x-4878 in cash and $80,000 in a cashier's check without the permission and knowledge of C.B., using a forged signature of C.B.

(14)     On or about May 9, 2017, at approximately 12:13 p.m., DRUMMOND entered the Van Ness Wells Fargo while Conspirator A assisted Conspirator C.

(15)     On or about May 9, 2017, shortly after 12:15 p.m., Conspirator C met with DRUMMOND and gave DRUMMOND the proceeds that Conspirator C had obtained without the permission of C.B.

(16)     On or about May 9, 2017, at approximately 12:27 p.m., Conspirator A made a phone call to Conspirator B.

(17)     On or about May 15, 2017, Conspirator B ordered an additional $50,000 in cash for delivery to the Van Ness Wells Fargo.

(18)     On or about May 15, 2017, at approximately 9:30 a.m., Conspirator B viewed accounts linked to x-9649 which were held by D.H.

(19)     A few moments later, a member of the conspiracy transferred and caused to be transferred $24,100 from D.H.'s other accounts to x-9649, without the permission and knowledge of D.H.

(20)    On or about May 15, 2017, at approximately 4:56 p.m., Conspirator B viewed accounts linked to D.H.'s account x-9649.

(21)    On or about May 15, 2017, at approximately 5:06 p.m., Conspirator B assisted a Conspirator C in withdrawing $24,000 from x-9649 in cash without the permission and knowledge of D.H.

(22)    On or about May 15, 2017, shortly after 5:06 p.m., Conspirator C met with DRUMMOND and gave DRUMMOND the funds that Conspirator C had obtained without the permission of D.H.

(23)    On or about May 15, 2017, at approximately 9:00 p.m., DRUMMOND placed a phone call to Conspirator B.

(24)    On or about May 18, 2017, at approximately 9:08 p.m., DRUMMOND placed a call to Conspirator B.

**(Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 371 and 1344(2))**

## COUNTS TWO THROUGH FIVE
### (Bank Fraud)

17.    Paragraphs 1 through 15 are realleged.

18.    On or about the following dates, in the District of Columbia, Defendant DRUMMOND executed and attempted to execute a scheme and artifice to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, or under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, and promises:

| COUNT | DATE | TRANSACTION IN EXECUTION OF SCHEME |
|---|---|---|
| 2 | May 5, 2017 | Withdrawal of $50,000 in cash from the bank account of C.B. at the Van Ness Wells Fargo (Overt Act 5) |
| 3 | May 9, 2017 | Withdrawal of $50,000 in cash from the bank account of C.B. at the Van Ness Wells Fargo (Overt Act 13) |
| 4 | May 9, 2017 | Purchase of cashier's check in the amount of $80,000 from the account of C.B. at the Van Ness Wells Fargo (Overt Act 13) |
| 5 | May 15, 2017 | Withdrawal of $24,000 in cash from the bank account of D.H. at the Van Ness Wells Fargo (Overt Act 21) |

**(Bank Fraud, in violation of 18 U.S.C. § 1344(2); Aiding and Abetting,
and Causing an Act to be Done, in violation of 18 U.S.C. § 2.)**

### COUNTS SIX THROUGH NINE
**(Aggravated Identity Theft)**

19.   Paragraphs 1 through 15 are realleged.

20.   On or about the following dates, in the District of Columbia and elsewhere,

Defendant DRUMMOND did knowingly transfer, possess, and use, without lawful authority, a

means of identification of another person, that is, the person's name and bank account number,

during and in relation to certain felony offenses:

8

| COUNT | DATE | VICTIM | FELONY OFFENSES |
|-------|------|--------|-----------------|
| 6 | May 5, 2017 | C.B. | Conspiracy to Commit Bank Fraud (Count One); Bank Fraud (Count Two) |
| 7 | May 9, 2017 | C.B. | Conspiracy to Commit Bank Fraud (Count One); Bank Fraud (Count Three) |
| 8 | May 9, 2017 | C.B. | Conspiracy to Commit Bank Fraud (Count One); Bank Fraud (Count Four) |
| 9 | May 15, 2017 | D.H. | Conspiracy to Commit Bank Fraud (Count One); Bank Fraud (Count Five) |

**(Aggravated Identity Theft in violation of 18 U.S.C. § 1028A; Aiding
and Abetting, and Causing an Act to be Done, in violation of 18 U.S.C. § 2)**

## FORFEITURE ALLEGATION

21.     Upon conviction of the offense alleged in Count One, the defendant shall forfeit
to the United States: a) any property constituting, or derived from, proceeds the defendant
obtained directly or indirectly, as a result of this offense, pursuant to 18 U.S.C. § 982(a)(2)(A);
and, b) any property, real or personal, which constitutes or is derived from proceeds traceable to
this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.  The United States will
also seek a forfeiture money judgment against the defendant equal to the value of this property.

22.     Upon conviction of the offenses alleged in Counts Two, Three, Four, or Five, the
defendant shall forfeit to the United States any property, real or personal, which constitutes or is
derived from proceeds traceable to those offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28
U.S.C. § 2461(c).  The United States will also seek a forfeiture money judgment against the
defendant equal to the value of any property constituting, or derived from, any proceeds
obtained, directly or indirectly, which constitutes or is derived from proceeds traceable to these
offenses.

9

23.     If any of the property described above as being subject to forefeiture, as a result

of any act or offense of the defendant:

    a.    cannot be located upon the exercise of due diligence;
    b.    has been transferred or sold to, or deposited with, a third party;
    c.    has been placed beyond the jurisdiction of the Court;
    d.    has been substantially diminished in value; or
    e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendants up to the

value of the property described above pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1) and (a)(2)(A), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p))**

                  A TRUE BILL

                  _____

                  Foreperson

                  Date:

_Channing D. Phillips/jpk_
CHANNING D. PHILLIPS
Acting United States Attorney
for the District of Columbia